## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Parkridge 6, LLC et al          )
                                )
                Plaintiff,      )
                                )
        v.                      )
                                ) Civil Action No. 09-cv-01478(GK)
United States Department of     )
Transportation, et al           )
                                )
                Defendant.      )


## MEMORANDUM OPINION

Plaintiff Parkridge 6 is a Virginia-based LLC which owns property adjoining the proposed development route of the Dulles Corridor Metrorail Project ("Project"). Plaintiff Dulles Corridor Users Group is a Virginia-based civic advocacy group established to monitor the development of the Project. Defendants are the United States Department of Transportation ("USDOT"), the Federal Transit Administration ("FTA"), the Federal Highway Administration ("FHWA"), the Virginia Department of Transportation ("VADOT"), and the Metropolitan Washington Airports Authority ("MWAA"). Plaintiffs bring this action against Defendants alleging that the Project violates numerous provisions of federal and Virginia state law. This matter is before the Court on Defendants' Motion to Transfer Venue to the Eastern District of Virginia.

I.    **BACKGROUND**

**A. Factual Background**

The Project is a transportation construction project currently underway to expand the Washington Metropolitan Metrorail system for twenty-three miles in Northern Virginia.   The Project aims to extend Metrorail service to Washington Dulles International Airport ("Dulles Airport"), which will impact the area surrounding Route 267, a Virginia state highway.   Plaintiff Parkridge 6 owns land adjacent to Route 267. Compl. ¶ 13.

Defendant MWAA is a public interstate compact entity based in Virginia.   Defs.' Mot. 3.   In 1987, Defendants USDOT and MWAA entered into a lease transferring operational responsibility for Dulles Airport and the Dulles Airport Access Road to MWAA.   Compl. ¶ 53.   Pursuant to a 2006 agreement between MWAA and the Commonwealth of Virginia, the Commonwealth transferred possession and control of certain land in Northern Virginia to the MWAA in exchange for MWAA's assumption of the obligation to design and construct the Project on that land.   Defs.' Mot. 3

On March 10, 2009, the federal government and MWAA entered into a full funding grant agreement.   Compl. ¶ 4.   The Project is being financed through contributions of MWAA, the Commonwealth of Virginia, Fairfax County, Loudoun County, grant funds from Defendant FTA, and revenue from the Dulles Toll Road.   Defs.' Mot. 3.   Defendant FHWA maintains jurisdiction over federal highway

design, including proposed use of the highway for public transit. Compl. ¶ 346.

## B. Procedural Background

On August 6, 2009, Plaintiffs filed a 15-count Complaint with this Court against USDOT, FTA, FHWA, VADOT, and MWAA.

Twelve of the counts allege Defendants' violations of Virginia law: Counts II and XIII allege violations of the Virginia Constitution, Count III alleges violations of the Virginia State Bond Revenue Act, Count IV alleges violations of MWAA's lease agreement with the FAA, which is "governed by the law of the Commonwealth of Virginia," Counts VI and VII rely on MWAA's enabling statute, Va. Code § 5.1-152, Count VIII asserts violations of the Virginia Freedom of Information Act, Counts IX and X allege violations of the Virginia Public Private Partnership Act, and Counts XI and XV allege violations of Va. Code. § 33.1-287, which authorizes the use of toll roads.

Only Counts I, V, and XIV contain no causes of action under Virginia law, and assert exclusively federal claims.[1]

On September 22, 2009, all Defendants filed a Joint Motion to Transfer Venue to the Eastern District of Virginia and to Stay

---

[1]     Count I alleges the FTA violated 49 U.S.C. § 5309, which authorizes capital investment grants, Count V alleges a violation of unspecified federal law by FHWA and MWAA for a failure to obtain a waiver of federal highway safety standards, and Count XIV alleges MWAA violated 23 C.F.R. §§ 620, 635, 6363, and 710 by failing to complete a market validation study.

Response Deadline.   On October 7, 2009, this Court granted Defendants' Motion to Stay, pending resolution of the Motion to Transfer.

## II. ANALYSIS

The federal venue transfer statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The statute vests "discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988).  As the moving party, Defendants bear the burden of establishing that the transfer of these actions to another federal district is proper.  See Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006).

The threshold question under 1404(a) is whether the action could have been brought in the Eastern District of Virginia. Van Dusen v. Barrack, 376 U.S. 612, 613 (1964).  In a suit brought under federal question jurisdiction, venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.

§ 1391(b)(2) (2006).[2]  Because Plaintiffs concede that "the Eastern District of Virginia federal court has jurisdiction and venue for all the claims made in this complaint," there is no dispute as to whether this action could have been brought in the Eastern District of Virginia.  Compl. ¶ 22.

Defendants must then demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer. Trout v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). The Court weighs a number of private and public factors in that determination. See id. at 13.  The public interest considerations include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts;[3] and (3) the local interest in deciding local controversies at home."  Berenson v. Nat'l Fin. Services, LLC, 319 F. Supp. 2d 1, 2-3 (D.D.C. 2004).  The private interest considerations include (1) the plaintiffs' choice of

_____

[2]     This analysis also applies under 28 U.S.C. § 1391(e), which governs venue in actions where a defendant is an officer or employee of the United States acting in his official capacity.  In such cases, venue is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(e)(2) (2006).

[3]     Plaintiffs rely on Onyeneho to assert that congestion is not a factor to be considered in transfer. Pls.' Am. Opp'n 10 n.8. However, in Onyeneho, the court merely found that there was no significant difference in the congestion of the dockets between the transferee and the transferor courts, and did not deny the factor's relevance.  See Onyeneho, 466 F. Supp. 2d at 3.

forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the parties, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. Id.

### A. The Public Interest Factors Support Transfer to Virginia

The Eastern District of Virginia is more familiar with the governing law, and as such is a more appropriate venue for these claims.  Twelve of the fifteen counts in the complaint arise under Virginia law,[4] and the interests of justice are best served by "having a case decided by the federal court in the state whose laws govern the interests at stake."  Trout, 944 F. Supp. at 19; See also Schmid Labs., Inc. v. Hartford Acc. and Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986); Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979).  While Plaintiffs argue that venue in the District of Columbia is proper given this

---

[4]    Further, Plaintiffs contend that "there is one state claim in this lawsuit, the issue wether tolls on Route 267 are really taxes improperly imposed by a nonelected body in violation of the Virginia Supreme Court's opinion in Marshall v. NVTA." Pls.' Am. Opp'n 16.  This contention lacks credibility in light of the fact that Plaintiffs' Complaint alleges violations of the Virginia Constitution, the Virginia Freedom of Information Act, the Virginia Public Private Partnership Act, and numerous provisions of the Virginia Code. See Compl. ¶¶ 295-327, 349-66, 371-437, 443-459, 446-67.

District's familiarity with administrative law, counts asserting federal law claims in Plaintiffs' Complaint allege straightforward violations of statutes and regulations.  Pls.' Am. Opp'n 17.

The public interest in judicial efficiency also weighs in favor of transfer.  While "congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered." Starnes v. McGuire, 512 F.2d 918, 932 (D.C. Cir. 1974).  For the twelve-month period ending March 31, 2008, the median time from filing to disposition in the District Court for the District of Columbia was 8.9 months.  Ex. 2 to Defs.' Mot.  By contrast, the median time for the Eastern District of Virginia was only 5.1 months.  Id. Furthermore, the median disposition time of cases proceeding to trial in this District is thirty-six months, while the median time in the Eastern District of Virginia is 10.6 months, nearly two years less.[5]  Id.  Accordingly, this factor weighs in favor of transfer.

Finally, the local interest in deciding local controversies at home weighs heavily in favor of transfer.  This case concerns a "greater matter of public concern" to the citizens of Virginia than

---

[5]     Plaintiffs cite a 2003-2004 District Court Case Weighting Study to demonstrate that the weighted federal district court case filings in the Eastern District of Virginia were significantly higher than those in the District of Columbia.  Pls.' Am. Opp'n 10 n.8.  However, courts evaluate the congestion factor on the basis of "potential speed of resolution" rather than filings per judge. See Starnes, 512 F.2d at 932.

to residents of the District of Columbia.   <u>See</u>   <u>Hawksbill Sea</u>
<u>Turtle v. Fed. Emergency Mgmt. Agency</u>, 939 F. Supp. 1, 4 (D.D.C.
1996).   The Project is located solely within Virginia, and
increased tax rates used to finance the Project are to be borne by
Virginia residents.   The economic development surrounding the
Project involves Virginia businesses and residents.   Plaintiffs
contend that this case is of concern to the District of Columbia
because the purposes of the Project include "serving the
transportation demand that begins or ends in the District of
Columbia."   Pls.' Am. Opp'n 20.   While there may be a not
inconsiderable impact on the District of Columbia, fundamentally
this dispute focuses on Virginia transportation development. <u>See</u>
<u>Envtl. Def. v. U.S. Dept. of Trans.</u>, No. 06-CV-2176 (GK), 2007 WL
1490478, at *4 (D.D.C. May 18, 2007) (concluding in a similar case
that collateral effects on the District of Columbia will not
prevent transfer).

     In sum, the public interest factors clearly indicate that
Virginia is the more appropriate forum for this litigation.   The
claims center on Virginia law and primarily affect Virginia
residents.   Furthermore, the relative congestion of court dockets
indicates parties will likely obtain faster resolution in Virginia.

B.   **The Private Interest Factors Do Not Weigh Heavily Against Transfer**

The private interest factors do not outweigh the public interest in transferring this case to the Eastern District of Virginia.

Defendants clearly prefer transfer to Virginia, as all Defendants have joined the Motion.[6]  While the Court must afford some deference to Plaintiffs' choice of forum, this deference is mitigated "when the plaintiff is not a resident of its chosen forum. . . ." Air Line Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987); Chung v. Chrysler Corp., 903 F. Supp. 106, 165 (D.D.C. 1995).  Furthermore, the deference to a plaintiff's choice of forum is "substantially diminished where . . . transfer is sought to the forum where plaintiffs reside." Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983).  In this case, Defendants seek transfer to Virginia, the home forum of both Plaintiffs.

Convenience of the parties would not be greatly affected by transfer, given the close proximity of the two jurisdictions.  See Oneyeho, 466 F. Supp. at 6 (finding that "because Maryland and the District of Columbia are in close proximity, the convenience of the

_____

[6]     Plaintiffs allege that Defendants' preference is accorded little weight because Defendants' preference to litigate outside their home forum infers forum shopping.  Pls.' Am. Opp'n 11. However, the Eastern District of Virginia is the home forum of Defendant VADOT.

-9-

parties would not be greatly affected" by transfer).  As Plaintiffs point out, transfer "would move the case a mere eight miles." Pls.' Am. Opp'n 14.[7]   Similarly, none of the parties contend that witnesses will be unavailable in Virginia, nor do any of them argue that transfer would limit access to sources of proof.

Lastly, the fact that the claims arose in Virginia supports transfer.  Courts frequently grant transfer motions where the circumstances giving rise to the controversy occurred in the transferee forum.  Berenson, 319 F. Supp. 2d at 2-3 (D.D.C. 2004). The Project is a proposed development on Virginia land that will greatly affect transportation in Northern Virginia.  Plaintiffs rely on the fact that the federal decisions and approvals relating to the Project were made in the District of Columbia or "by agencies headquartered in the District of Columbia which were, without doubt, involved in the ultimate decisions reached by the agency." Pls.' Am. Opp'n 14.  Although the decisions and approvals may have been made within the borders of the District of Columbia, the object of the decisions and approvals was the proposed Virginia transportation development.  See Envtl. Def., 2007 WL 1490478 at *7.  In addition, the increased tax rates at dispute will affect Virginia residents, in alleged violation of Virginia law.

---

[7]   Plaintiffs contend that transfer would "impose a hardship on existing pro bono counsel." Pls.'Am. Opp'n 15.  However, Plaintiffs base this hardship solely on the "congested highways" of Northern Virginia.  Id.  Given the proximity of the two Districts, the Court is not persuaded that this would impose substantial inconvenience on Plaintiffs.

Plaintiffs' argument that their choice of forum should not be disturbed thus fails.   In this case, judicial economy and the public interest of Virginia citizens outweigh any deference to Plaintiffs' choice of forum.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Transfer is **granted.**


November 9, 2009                     /s/_____
                                     Gladys Kessler
                                     United States District Judge


**Copies via ECF to all counsel of record**